IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ANTHONY DOUGLAS,

        Plaintiff,

v.                                           Civil Action No. 2:04-CV-85

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    <u>Background</u>

    Plaintiff, Anthony G. Douglas, (Claimant), filed his Complaint on November 11, 2004,

seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant,

Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on January 19,

2005.[2] Claimant filed his Motion for Summary Judgment and Memorandum in Support on February

17, 2005.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support on March

21, 2005.[4] Claimant filed his response to Commissioner's Motion for Summary Judgment on April

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket No. 8.

[4] Docket Nos. 9 and 10.

8, 2005.[5]

B.    The Pleadings

       1.    Claimant's Motion for Summary Judgment and Brief in Support.

       2.    Commissioner's Motion for Summary Judgment and Brief in Support.

       3.    Claimant's Reply to Commissioner's Motion for Summary Judgment.

C.    Recommendation

       1.    I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) properly evaluated and weighed the expert opinions contained in the record; (2) conducted a proper credibility analysis; (3) properly considered, weighed and rejected the opinions of the vocational rehabilitation counselors; (4) properly considered Claimant's personality disorder; and (5) met his burden at Step Five of the Sequential Analysis.

## II.  Facts

A.    Procedural History

     On November 28, 2001, Claimant filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments alleging disability since October 1, 2001. The application was denied initially and on reconsideration. A hearing was held on February 4, 2003 before an ALJ. The ALJ's decision, dated April 14, 2003, denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on October 7, 2004. This action was filed and proceeded as set forth above.

---

[5] Docket No. 11.

B.    <u>Personal History</u>

Claimant was 25 years old on the date of the February 4, 2003 hearing before the ALJ.

Claimant has a high school education and past relevant work experience as a janitor, roofing laborer

and fast food worker.

C.    <u>Medical History</u>

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability: October 1, 2001- April 14, 2003.

**West Virginia Disability Determination Service, 05/06/2002, Tr. 134-139**
DIAGNOSES: Axis I: Dysthymia
                Axis II: 1. Borderline intellectual functioning
                    2. Personality disorder, NOS
                Axis III: No diagnosis

**Mental Residual Functional Capacity Assessment, 05/13/2002, Tr. 145-148**
NOT SIGNIFICANTLY LIMITED: the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to interact appropriately with the general public, the ability to get along with coworkers or peers without distracting them of exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation. MODERATELY LIMITED:  the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to set realistic goals or make plans independently of others.

**Psychiatric Review Technique, 05/13/2002, Tr. 149-162**
DISORDER: BIF, dipthymia, Personality disorder, NOS
FUNCTIONAL LIMITATION: MILD- restriction of activities of living daily, MODERATE- difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace.

**Family and Marital Counseling Center, Psychological Evaluation, 08/12/2002, Tr. 165-170**

DSM-IV DIAGNOSES: Axis I: 309.4- Adjustment disorder with mixed disturbance of emotions and conduct

                    312.34- intermittent explosive disorder

              Axis II: 301.9 personality disorder NOS, with paranoid and narcissistic features (primary)

              Axis III: None Reported

IMPRESSIONS: Public school records reviewed support a lifelong level of borderline intellectual functioning. According to the ABAS, Mr. Douglas's adaptive functioning skills are in the extremely low range. Mr. Douglas is not able to live independently without being in a highly supportive living environment.

**Psychiatric Review Technique, 08/15/2002, Tr. 171-184**
DISORDER: personality disorder NOS, with paranoid and narcissistic features
FUNCTIONAL LIMITATION: MODERATE- difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace. MARKED- restriction of activities of living daily,

**Medical assessment of ability to do work-related activities, 08/15/2002, Tr. 185-187**
RESULTS: FAIR- use of judgement, understand, remember, and carry out simple job instructions. POOR- follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, understand, remember, and carry out complex job instructions, understand, remember, and carry out detailed, but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability

**Mental Residual Functional Capacity Assessment, 09/05/2002, Tr. 188-191**
NOT SIGNIFICANTLY LIMITED: the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to make simple work-related decisions, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them of exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, the ability to set realistic goals or make plans independently of others.
MODERATELY LIMITED: the ability to understand and remembered detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for

extended periods

**Psychiatric Review Technique, 09/06/2002, Tr. 192-205**
DISORDERS: BIF, dipthymia, Personality disorder, NOS
FUNCTIONAL LIMITATION: MODERATE- difficulties in maintaining concentration, persistence, or pace.

**Vocational Evaluation Report, 03/21/2001, Tr. 206-209**
DISCUSSION: Testing indicates an individual with a specific learning disability. Learning ability in the low average range with strength in general arithmetic and basic reading. This individual has difficulty with spatial perception, abstract thinking, and form perception. The Bender suggests a great deal of anxiety.

**Psychiatric Associates Evaluation Form, 03/10/2002, Tr. 210-212**
ASSESSMENT: Cannot function in most work situations because of learning disorders, borderline intellect, and personality disorder

D.      Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows

(Tr. 258-275 ):

Q       Did you feel like the chemicals gave you headaches?

A       Headaches.

Q       What about your fast-food job?

A       I just couldn't keep up.

Q       Okay.  Did you have any problems with the people there?

A       Sometimes.

Q       What did they have you doing?

A       Clean-up, fixing hamburgers.

Q       Did you have a hard time doing that as fast as some of the other people?

A       Sometimes.

5

Q       Did anyone - - did they - - did anyone - - any of your co-employees make fun of you or say things to you?

A       Ones like he needs to hurry up.

Q       Okay.  How did you take that?   Those comments?

A       I didn't like it.

Q       What did you do?

A       I got mad and put him in his place.

Q       How did you put the fellow in his place?

A       I just kind of shoved him on the ground.

Q       All right. What made you finally stop doing that job?

A       Just couldn't deal with the people.  You're under a lot of pressure.

Q       Okay.  Did you finally quit?

A       Yeah.

                        *                  *                  *

Q       What do you think keeps you from working?

A       Just my personality disorders.

Q       Okay.  What - - do you have conflicts with people?

A       Yes.

Q       Do you have many friends?

A       Not really, only two.

Q       Okay.  What kind of conflicts do you have with people?

A       Until they, like, they - - when they find out these problems.  They like to take

advantage of me, make fun of me.

Q        Okay.  Do you ever have those types of problems with, say, girlfriends?

A        Most definitely.

Q        Do you meet girlfriends okay?

A        I meet them.  Then when they get to know me, they don't want to be around me,
after they find out I have these personality disorders.

Q        Do you - - have you had that problem with people throughout your life?

A        Yes.

Q        All right.  Do you get frustrated or aggravated?

A        Most definitely.

Q        Do you feel like you want to do a job picking up trash at the rest area?

A        I mean I'd like to succeed in life, but it's - -

Q        Do you see that as not succeeding?

A        Not succeeding to me.

Q        Okay.  What - - are there any kind of jobs around there that you think you could
do?

A        Not that I know of.

Q        All right.  What's the biggest thing that keeps you from going out and getting a
job?

A        It's my disorders.

Q        Is that getting along with the people, then?

A        Getting along, work, comprehending.

Q       Okay.  Do you - - how is your reading and writing, those sorts of things?

A       Writing, fair; reading, I'd say fair, it depends.

Q       Okay.

A       I'm not a big college reader.

Q       Do you like to admit that you have a problem?

A       Not really.

Q       Do you try to hide those things?

A       From people, yeah.

Q       Have you tried to hide that from employers?

A       Not necessarily, because they eventually find out I have these problems later.

Q       Do you feel like it eventually shows?  They eventually see?

A       Yeah, it will show it.

Q       All right.  Have you gotten in fights with people in your life?

A       Once - - maybe once or twice.

Q       Do you ever get in arguments?

A       Sometimes.

Q       Do you get out around people very much?

A       Once in a while, like if - - my dad or my mom or maybe like a friend.  That's about it.

                        *               *               *

Q       That's fair.  What about do you have a hard time dealing with employers criticizing you?

A       Yes.

Q       What about people in general - -

A       Yes.

Q       - - criticizing you?  Have you had to deal with that throughout your life?

A       Um-hum.  School.  Kids.

Q       That's been normal ever since school?

A       School.

Q       Do you feel like you're pretty sensitive to that?

A       Yes.

Q       You don't take it very well?

A       No.

                    *                    *                    *

Q       Would you still be at the rest area attendant if it wasn't because of the chemicals?
Do you think you could have handled that job with people and the job requirements if it wasn't
for the chemicals?

A       Probably not.

Q       Please?

A       No.

Q       And why would that be?

A       Because I have a hard time getting along with people sometimes.

Q       Ever had any legal infractions?

A       We - -

Q      Trouble with the Law?

A      No.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 275-278 ):

Q      Would you please describe Mr. Anthony's past - - Mr. Douglas' past work?

A      Okay.  The work as the janitorial for the rest area is light exertional, unskilled with an SVP of 2.  Labor for roofing, that's customarily a very heavy exertional, unskilled at SVP 2.  The file indicates, though, that he was lifting only 50 pounds so he was performing it at the medium exertional.  The job as the fast food worker: light exertional, unskilled at SVP 2. And that's all the jobs, Your Honor.

Q      Please assume a younger individual with a high school education with no exertional limitations, precluded from performing all but unskilled work that's low stress, confined to just one- and two-step - - excuse me - - processes, routine and repetitive tasks, primarily working with things rather than people, entry-level.  With those limitations, can you describe any work that this hypothetical individual can perform?

A      Okay.  Utilizing for the region the State of West Virginia, at the heavy exertional, SVP of 2: commercial cleaner.  We have 500,000 national; we have 5,000 regional. Washing machine loader and puller: heavy, SVP 2, 110,000 national, 2,000 regional.  Medium exertional, SVP 2 - - also State of West Virginia for the region - - equipment washer: 90,000 national, 1,000 regional.

Q      Are those jobs consistent with the DOT?

A       Yes, they are, sir.

Q       My second hypothetical, if Mr. Douglas cannot stay on task 1/3 to 2/3 of the workday, are those jobs impacted?

A       Yes, they are, sir.

Q       What is tolerable level of absenteeism?

A       No more than two days a month for entry-level, unskilled employees.

ALJ       Mr. Miller?

ATTY       Thank you, Your Honor.  Your Honor, may I present to Mr. Czuczman the mental residual functional capacity form completed by Doctor - -

ALJ       Lebanon?

ATTY       Lebanon, yes sir.

ALJ       All right.

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q       Okay.  Mr. Czuzman, with those limitations, would there be any jobs?

A       I would say not.  There's too many areas that are poor, and the only thing that is a saving grace to some degree is fair - - if I understand him - - remembering and carrying out simple instructions.  But even to that ability, when they talk about capability to manage benefits - - that he can't even manage his own benefits according to this assessment; therefore, I would say such an individual would not be able to maintain a regular, full-time job.

Q       Okay.  Mr. Czuczman, in the jobs that you mentioned earlier in response to the Judge's hypotheticals, would you customarily have to fill out a job application for those?

A       Well, either of you fill it out or someone fills it out for you.  There are these jobs

in a laundry, people - - a lot of people that come over that are immigrants in our country - - they can't read or write - - and perform these jobs.  I picked jobs that have an L-1, language level of 1, so reading and writing is not required for the job.  And that in mind, someone would be able to fill out an application for them provided they had what was legally required, which is a Social Security number, and the right to work in the country.   As long as they were able to provide that information, the application is not an issue for unskilled jobs.

Q      Okay.  Do any of these jobs customarily provide a mentoring position?

A      No, these would not.

E.      Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life.

• Watches television.  (Tr. 138).

• Helps his mother with vacuuming, dusting. (Tr. 138).

• Can cook simple meals and wash dishes.  (Tr. 168).

• Has a driver's license and is able to drive short distances. (Tr. 262).

• Goes to the store with his mother.  (Tr. 271).

• Sometimes helps with the grass.  (Tr. 271).

• Plays guitar.  (Tr. 217).

• Sometimes, goes out with his dad.  (Tr. 271).

• Works out at a gym.  (Tr. 273).

• Reads magazines (Tr. 273).

### III. The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred: (1) by failing to properly evaluate and weigh the expert opinions contained in the record;  (2) by failing to conduct a proper credibility analysis, pursuant to SSR 96-7p; (3) by improperly rejecting and failing to consider and weigh the opinions of the vocational rehabilitation counselors; (4) by substituting his own lay opinions for those of the medical experts regarding Claimant's personality disorder; and (5) in failing to meet his burden at Step Five of the Sequential Analysis.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ (1) properly evaluated and weighed the expert opinions contained in the record;  (2) conducted a proper credibility analysis, pursuant to SSR 96-7p; (3) properly rejected, considered and weighed the opinions of the vocational rehabilitation counselors; (4) properly considered Claimant's personality disorder; and (5) met his burden at Step Five of the Sequential Analysis.

B.    The Standards.

1.    Summary Judgment.    Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.    Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.    Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.    Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.    Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.    Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hays

v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.  Social Security - Scope of Review - Weight Given to Relevant Evidence.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.  Social Security - Substantial Evidence - Defined.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.  Social Security - Sequential Analysis.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).
complete record."  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

10.  Social Security - Non-treating physician.  It is the duty of the ALJ, not the courts, to

make findings of fact and resolve conflicts in the evidence. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. Id.

11. Social Security - Claimant's Credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990).

12. Social Security - Subjective Complaints of Pain. Claimant's statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). Claimant's statement about her pain or other symptoms will not alone establish that claimant is disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof. Id. at 592 (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

13. Social Security - Claimant's Credibility - Pain Analysis. The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an

impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996).

14. <u>Social Security - Residual Functional Capacity</u>. A Residual Functional Capacity is what Claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. <u>Id</u>. It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. <u>Id</u>. Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. <u>Id</u>. These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. <u>Id</u>. This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments. <u>Id</u>.

15. <u>Social Security - Vocational Expert</u>. Once it is established that a claimant cannot perform past relevant work, the burden shifts to the Social Security Administration to establish that a significant number of other jobs are available in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520(f), 416.920(f).

C. <u>Discussion</u>

1. <u>Failure to Properly Evaluate and Weigh the Expert Opinions Contained in the Record</u>.

Claimant maintains that the ALJ erred by giving no weight to the psychological evaluation performed by Brenda Smith and Robert Klein, psychologists from Family and Marital Counseling, and by giving "great weight" to the opinions of the agency reviewing psychologists. Commissioner counters that the ALJ gave proper weight to Ms. Smith and Dr. Klein's psychological opinions and properly decided that they were not entitled to controlling weight.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. Id.

In reviewing the decision of the ALJ, the Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. Weighing conflicting evidence from medical experts is exactly what the ALJ is required to do. See Books v. Chater, 91 F3d 972, 979 (7th Cir. 1996)(pointing out that when assessing conflicting medical evidence from medical experts, an ALJ must decide, based on several considerations, which doctor to believe).

Ms. Smith is not a treating physician. Ms. Smith examined Claimant on referral from Claimant's counsel. Ms. Smith opined that Claimant has poor ability for making occupational, performance and personal-social adjustments. (Tr. 165-170). The ALJ considered Ms. Smith's evidence in light of all the other evidence before him. The ALJ evaluated the evidence submitted by the many medical experts in this case and decided that Ms. Smith's opinion was inconsistent with the record and worthy of less weight. Specifically, the ALJ noted that the two state agency psychologists found that Claimant was "capable of performing simple routine instructions and

relating adequately to supervisors and co-workers in a low pressure work setting with ordinary supervision." (Tr. 25). The ALJ also noted that a reviewing psychiatrist found that Claimant had the mental capacity for simple work-related activity." (Tr. 25). Additionally, during his May 2001 examination, Dr. Pearse noted that Claimant was cooperative, responded appropriately, displayed a normal range of social skills, appeared extroverted, had relevant and coherent speech, interacted appropriately, displayed a fair amount of spontaneity and had fair judgment, good immediate recall and fair recent and remote recall. (Tr. 127-28). Finally, Dr. Stein also noted that during his May 2002 examination, Claimant was cooperative and polite; had relevant and coherent speech; had no thought precessing disorders; had no preoccupation of thought, obsessive thinking, or phobias; had fair insight; and only mild to moderate deficiencies in memory.[6] (Tr. 137-138).

This is not the case where a treating physician's opinion was disregarded in favor of the opinion of a consulting physician. See Books v. Chater, 91 F.3d 973, 979 (7th Cir. 1996); 20 C.F.R. § 404.1527 (d)(2). In this case, none of the medical experts was a treating physician. Nor

---

[6] Claimant alleges that the ALJ erred in relying on the state agency psychologists' opinions because they did not review the entire record. This court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether the correct law was applied. Taken together with the record as a whole, a non-examining provider's medical opinion can be considered when forming the basis of an ALJ's opinion. See Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004)(opinion of a consulting physician who does not examine the claimant does not ordinarily constitute substantial evidence). The ALJ in this case did not rely solely on the state agency opinions to reach his conclusion. Rather, he relied on their opinion as one part of the record. See SSR 96-6p, 1996 WL 374180 at 1-3(SSA July 2, 1996)(an ALJ must treat expert opinion evidence of non-examining providers in conjunction with the other evidence of record). However, Dr. Gouts noted that he did review the report of Ms. Smith and Dr. Klein. (Tr. 165-190). Additionally, although the state agency psychologists did not have access to the reports submitted after the hearing, they reviewed the reports of Dr. Pearse and Dr. Stein, Claimant's school records, Claimant's report regarding his daily activities and symptoms. (Tr. 145-163, 192-205).

is it a case where the ALJ improperly rejected an examining physician's opinion in favor of non-examining physician's decision. Gudgel v. Barnhart, 345 F.3d 467, 479 (7th Cir. 2003)("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). In this case, one examining physician's opinion was contradicted by several other examining and non-examining physician's opinion. After weighing the evidence, the ALJ opted to believe the latter group of medical experts. Therefore, the ALJ afforded proper weight to the expert opinion contained in the record. [7]

## 2. Failure to Conduct a Proper Credibility Analysis

Claimant asserts that the ALJ erred in determining his credibility. Commissioner counters that the ALJ properly determining Claimant's credibility.

Unfortunately for Claimant, his argument is without merit. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their

---

[7] Claimant also references Dr. Goudy's report, dated May 27, 2003, for the proposition that this additional evidence supports Ms. Smith and Dr. Klein's opinion. However, Dr. Goudy's report was based on an examination from beyond the relevant period and submitted to the Commissioner after the ALJ issued his decision. (Tr. 225-232). The Appeals Council considered this evidence and found that the ALJ fully considered the effects of Claimant's impairments when he found that he continued to be able to perform routine, repetitive, low-stress work involving 1 to 2 steps. (Tr. 7). The Council also noted that Dr. Goudy's opinion of disability was not entitled to significant weight because it was a finding reserved for the Commissioner. Id. The Council further stated that the ALJ's findings were "based on the record as a whole ans supported by the evidence of record." Id.

forthrightness, we afford their credibility determinations special deference."  See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997).  The ALJ must apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged.  Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In this case, the ALJ correctly applied the Craig test.  The ALJ found that Claimant had "borderline intellectual functioning, learning disability and a personality disorder, impairments that could reasonably be expected to produce the symptoms alleged." (Tr. 22).    However, the ALJ found that the objective evidence did not support the alleged severity.  (Tr. 22, 24).  This satisfies the first prong of Craig.

The ALJ considered Claimant's subjective complaints of debilitating symptoms in light of the entire record in accordance with the second prong of Craig.    The ALJ was in the best position to observe Claimant at the hearing and evaluate his credibility.  The ALJ pointed to Claimant's daily activities, finding that they undermined his complaints of debilitating mental limitations.  (Tr. 22).  For example, during his hearing, Claimant testified that he drove, went out, shopped with his mother, exercised, read magazines, cut the grass, watched television, attended church services, listened to music, played guitar, visited friends and dated regularly.  (Tr. 92-95 ).  Dr. Pearse noted that Claimant performed household chores; played drums, and enjoyed singing (Tr. 127 ).  Ms. Smith noted that Claimant's "daily activities consist of cooking simple meals, vacuuming, and washing dishes"; "he can grocery shop and drive"; "he is able to eat out and go to

the post office."  (Tr. 166).

Moreover, the ALJ noted that two state agency psychologists concluded that claimant was "capable of performing simple routine instructions and relating adequately to supervisors and co-workers in a low pressure work setting with ordinary supervision."  (Tr. 25, 145-148, 188-191). In addition, a reviewing psychiatrist also found that Claimant had the mental capacity for simple work-related activity.  (Tr. 163).

The ALJ further noted that Claimant's lack of treatment also failed to support his claims of disabling symptoms.  (Tr. 22-23).  The ALJ noted that both Dr. Pearse and Ms. Smith noted that cognitive/behavioral therapy may be beneficial to help diminish Claimant's "negative personality features and gain personal insight."  (Tr. 23).  However, Claimant admitted that he was not involved in any mental health treatment and did not take medication.  (Tr. 272-273). Finally, the ALJ noted that Claimant's mental status examinations "do not reflect disabling psychological signs or symptoms despite the fact the claimant has not received treatment."  (Tr. 23).  Having considered all the evidence in accordance with the second prong of Craig, the ALJ is in the best position to determine Claimant's credibility.  Although the ALJ determined that Claimant had medically demonstrable severe impairments, the ALJ also determined that Claimant's testimony was not fully credible and inconsistent with his medical record. Therefore, the ALJ properly assessed Claimant's credibility.

3. Improper Rejection and Failure to Consider and Weigh the Opinions of the Vocational Rehabilitation Counselors.

Claimant further alleges that the ALJ erred in discounting the opinion of Mr. Biafore and in ignoring the report of Ms. Lynch-Cantes.   The Commissioner counters that the ALJ properly

considered the opinions of Claimant's vocational counselors.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456. In reviewing the decision of the ALJ, the Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. As was stated above, weighing conflicting evidence from medical experts is exactly what the ALJ is required to do. See Books v. Chater, 91 F3d 972, 979 (7th Cir. 1996).

Although the ALJ is required to indicate the weight given to all relevant evidence, Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984), the Fourth Circuit does not require that the ALJ discuss every piece of evidence.[8] Therefore, this Court must examine the record to determine whether there is substantial evidence for the ALJ's decision. As was stated above, the Court will not re-weigh or reappraise that evidence.

In this case, the ALJ did not ignore the report of Ms. Lunch-Cantes. See 20 C.F.R. § 404.1513(d)(3)(requiring the ALJ to consider lay evidence, including evidence provided by "public and private social welfare agency personnel," in making disability decisions). The ALJ considered the evidence and cited to Exhibit 14F, Ms. Lunch-Cantes' report, and noted that psychological testing revealed mental limitations, such as poor concentration and mild-moderate memory deficits. (Tr. 25). With regard to the report of Mr. Biafore, the ALJ stated that Mr.

---

[8] The Undersigned notes that the Seventh Circuit has held that a written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. See Green v. Shalala, 51 F.3d 96, 101 (7th Cir.1995). Also, the Eighth Circuit has held that the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it. Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998). See also, Walker v. Secretary of Health and Human Services, 884 F.2d 241, 245 (6th Cir.1989)(reviewing court many examine all the evidence, even if it has not been cited in the Secretary's decision).

Biafore completed an assessment that "reflects the claimant poor or no ability to make occupational, performance-social adjustments." (Tr. 25). In considering the weight to give to Mr. Biafore's report, the ALJ states that "while consideration has been given the information provided by this source, the conclusions indicated in this assessment are not supported by his own records or elsewhere in the record." (Tr. 25). As was discussed above, the ALJ's findings were supported by the record. Therefore, the ALJ properly evaluated the opinions of Ms. Lynch-Cantes and Mr. Biafore.

4. <u>Failure to Properly Consider Claimant's Personality Disorder.</u>

Claimant also alleges that the ALJ substituted his opinion for the opinion of the medical sources and "minimized the significance" of Claimant's personality disorder. The Commissioner counters that the ALJ properly considered Claimant's personality disorder.

In support of his argument, Claimant states that "in downplaying the significance of the personality disorder, the ALJ seems to forget that Personality Disorders are recognized mental impairments that can be the basis of disability, as they are addressed in Listing 12.08." Pl.'s Br. at 14. Listing 12.08 provides that an adult is considered presumptively disabled if she suffers from a personality disorder of the requisite severity. The required level of severity is met when the criteria of both subsections "A" and "B" are satisfied.[9] In this case, the ALJ specifically found

---

[9]

These subsections provide:

    A. Deeply ingrained, maladaptive patterns of behavior associated with *one* of the following:
    1. Seclusiveness or autistic thinking; or
    2. Pathologically inappropriate or suspiciousness or hostility; or
    3. Oddities of thought, perception, speech and behavior; or
    4. Persistent disturbances of mood or affect; or
    5. Pathological dependence, passivity, or aggressivity; or
    6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

24

that "while the claimant's mental impairments meet the A criteria of Section 12.04-4 and 12.08-4, they do not result in the degree of functional restriction required to meet the B criteria of those listings." (Tr. 24). In this case, Claimant does not challenge the ALJ's finding that Claimant does not meet the requirements of Listing 12.08. Therefore, the Court's sole task in the context of this review is to determine whether, on the record as a whole, the ALJ's findings are supported by substantial evidence.

In his decision, the ALJ considered the evidence submitted by the many medical experts in this case and acknowledged "most of the mental health or vocational professionals have indicated that most of claimant's work-related problems are related to his personality disorder rather than limited intellectual functioning." (Tr. 22-23). As was discussed above, the ALJ's decision that Claimant retained the functional capacity to perform unskilled, low-stress, entry-level work that involved one-step and two-step processes, routine and repetitive tasks, and limited interaction with other was supported by substantial evidence. Therefore, the ALJ properly considered Claimant's personality disorder.

### 5. Failure to Meet his Burden at Step Five of the Sequential Analysis.

---

...
B. Resulting in *three* of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). See 20 C.F.R. Part 404, Subpt. P App. 1.

Claimant also contends that the ALJ failed to meet his burden at Step Five of the Sequential Analysis. The Commissioner counters that the ALJ properly met his burden at Step Five of the sequential evaluation process.

Pursuant to the five-step inquiry employed by administrative law judges to determine whether a claimant is disabled within the meaning of the Social Security Act, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. McLain v. Schweiker, 715 F.2d 866 (4th Cir. 1993). In this case, the administrative law judge determined that Claimant carried his burden of proof through the first four steps and demonstrated that he was unable to perform any of his past relevant work pursuant to 20 C.F.R. § 404.1565. To prevail at step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and take into account vocational factors such as age, education, and skills. McLamore v. Weinberger, 538 F.2d 572 (4th Cir. 1976). Thus, this Court's inquiry is limited to whether substantial evidence supports the administrative law judge's determination at step five of the inquiry--specifically, whether substantial evidence supports the administrative law judge's findings of Claimant's residual functioning capacity and the availability of jobs in significant numbers that accommodate his limitations.

A RFC is what Claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. Id. It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. Id. Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's

limitations may be used.  Id.  These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities.  Id.  This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments.  Id.  Light work is defined in the regulations as: "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

In this case, the ALJ made a RFC based on several factors, including Claimant's testimony, reports of consulting physicians and his comprehensive review of the medical evidence of record, as discussed separately above.  (Tr. 24-25).  From weighing this evidence, the ALJ determined that Claimant retained the RFC to perform a unskilled, low-stress, entry-level work that involved one-step and two-step processes, routine and repetitive tasks, and limited interaction with others.  (Tr. 20-28).

It is the duty of the ALJ to resolve conflicts in the evidence; whereas it is the duty of this Court to determine whether the Commissioner's findings are supported by substantial evidence. Hays, 907 F.2d at 1456.  This Court cannot say that, in light of the evidence of record and the evidence outlined in the ALJ's decision, there was not substantial evidence for the ALJ's determination of Claimant's RFC.  In this case, the RFC was supported by substantial evidence.

Moreover, in his response to the ALJ's hypothetical, the VE named the following jobs:

A        Okay.  Utilizing for the region the State of West Virginia, at the heavy

exertional, SVP of 2: commercial cleaner. We have 500,000 national; we have 5,000 regional. Washing machine loader and puller: heavy, SVP 2, 110,000 national, 2,000 regional. Medium exertional, SVP 2 - - also State of West Virginia for the region - - equipment washer: 90,000 national, 1,000 regional.

Q        Are those jobs consistent with the DOT?

A        Yes, they are, sir.

Claimant herein does not challenge the hypothetical question posed to the VE. As was stated above, in reviewing the ALJ's decision, the Court cannot re-weigh evidence, resolve conflicts in the record, decide questions of credibility or substitute our own judgment fo that of the Commissioner. Hays, 907 F.2d at 1456. See also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The ALJ properly found, based on the VE's testimony, that Claimant could perform work as a commercial cleaner, washing machine loader, and equipment washer. (Tr. 27). Therefore, the ALJ met his burden at Step Five of the sequential analysis.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) properly evaluated and weighed the expert opinions contained in the record; (2) conducted a proper credibility analysis; (3) properly considered, weighed and rejected the opinions of the vocational rehabilitation counselors; (4) properly considered Claimant's personality disorder; and (5) met his burden at Step Five of the Sequential Analysis.

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to

which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: January 6, 2006

 /s/ James E. Seibert
JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE